# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| North Country Marketing, Inc., | ) |
|                          Plaintiff,<br>vs. | ) **ORDER GRANTING**<br>) **DEFENDANTS' MOTION**<br>) **TO DISMISS**<br>) |
| Mandako Agri Marketing (2010) Ltd.,<br>and Mandako International, Inc. | ) Case No. 3:17-cv-207<br>) |
|                          Defendants. | ) |

Before the Court are two motions to dismiss. North Country Marketing, Inc. ("North Country") brought suit against Mandako Agri Marketing (2010) Ltd. in North Dakota state court in September of 2017. See Docket No. 1-3. Mandako Agri Marketing (2010) Ltd. removed the case to this Court on October 6, 2017, and filed a motion to dismiss on October 12, 2017. See Docket Nos. 1 and 4. North Country filed an amended complaint on October 27, 2017, which added Mandako International, Inc. as a defendant. See Docket No. 7. Both Defendants (together "Mandako") filed a renewed motion to dismiss on November 22, 2017. See Docket No. 22. North Country filed a response on December 6, 2017. See Docket No. 29. Mandako filed a reply on December 20, 2017. See Docket No. 32. For the reasons set forth below, the Court grants Mandako's renewed motion to dismiss.

## I.    BACKGROUND

The background is based on the allegations in North Country's amended complaint, which the Court takes as true for purposes of deciding this motion to dismiss. See Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999). North Country is a North Dakota corporation with its principal

place of business in West Fargo, North Dakota.  See Docket No. 7, p. 1.  Mandako Agri Marketing (2010) Ltd. and Mandako International, Inc. are corporations organized under the laws of Manitoba, Canada, with their principal place of business in Plum Coulee, Manitoba, Canada.  Id.

Mandako manufactures and sells agricultural equipment, including land rollers and vertical tillers.  See Docket No. 7-1.  Mandako sells its products in the United States through a dealership network spanning a number of states.  See Docket No. 7, p. 2.  North Country began marketing Mandako products in the United States in 2004.  Id.  In exchange for its marketing services, the parties orally agreed North Country would receive a 9% commission on its sales of Mandako products.  See Docket No. 7, p. 3.  The parties also agreed North Country would be Mandako's exclusive sales representative for land rollers in the United States and the exclusive sales representative for all other Mandako products in the states of North Dakota, South Dakota, Minnesota, Iowa, Nebraska, and Montana.  Id.  Along with its sales and marketing activities, North Country also stored and sold replacement parts for Mandako products.  See Docket No. 5.  North Country received a 9% commission on non-warranty Mandako parts sales.  Id.  To accommodate storing the parts, North Country increased the size of its headquarters.  Id.

The parties entered into a written Sales Representative's Agreement (the "2004 Agreement") on July 8, 2004.  See Docket No. 7, p. 6.  The 2004 Agreement mirrored the terms of the prior oral agreement.  North Country would be the exclusive land roller sales representative in the United States and the exclusive dealer for other Mandako products in the states of North Dakota, South Dakota, Minnesota, Iowa, Nebraska, and Montana.  Id.  At the time of the 2004 Agreement, North Country was Mandako's only sales representative in the United States.  Id.  Mandako encouraged North Country to expand its sales territories into other states, and Mandako

2

did so "at great expense in time, labor and money." Id. Due to this effort, North Country began "borrowing heavily to cover expenses." See Docket No. 7, p. 7.

In July of 2014, the parties signed a new sales agreement. This began what North Country describes as "a pattern of threatening termination of Sales Representative Agreements with North Country and forcing North Country to enter into new agreements with reduced territories." See Docket No. 7, p. 10. The parties signed subsequent sales agreements in 2015 and 2016. See Docket No. 7, pp. 9-10. The 2016 Sales Representative's Agreement ("2016 Agreement") limited North Country's exclusive representation to the states of North Dakota, South Dakota, Minnesota, Iowa, and Wisconsin. See Docket No. 24-1, p. 3. It also contained the following forum and choice of law provision:

> This Agreement shall be governed by and shall be construed in accordance with the laws of Manitoba. Proper legal venue for all matters related to this Agreements is agreed as the closest to Winnipeg, Manitoba.

See Docket No. 24-1, p. 6. It also contained the following integration provision:

> This Agreement constitutes the entire agreement between the parties pertaining to its subject matter and it supersedes all prior contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all parties.

Id.

In September of 2017, North Country brought suit against Mandako Agri Marketing (2010) Ltd. in North Dakota state court. See Docket No. 1-3. The complaint contained a panoply of claims, including wrongful termination of various agreements, breach of various contracts, unjust enrichment, and wrongful interference with business. See Docket No. 10, pp. 9-21. In an attempt to follow North Dakota's service of process laws, North Country filed the state action summons and complaint with the North Dakota Secretary of State. See Docket No. 1-4. On September 15,

2017, the Secretary of State sent the summons and complaint, along with an Admission of Service, via registered mail, to Mandako Agri Marketing (2010) Ltd. See Docket No. 6-1.

Mandako removed the state lawsuit to this Court on October 6, 2017. See Docket No. 1. On the same date, Mandako filed suit in Winnipeg, Manitoba, Canada. See Docket No. 5-1. Mandako's Canadian action brought claims for, among others, breach of contract, return of equipment, and misappropriation of funds. See Docket No. 5-1, p. 5. On October 12, 2010, Mandako filed a motion to dismiss the present case arguing service of process was insufficient and, under the choice of forum provision contained in the 2016 Agreement, the proper forum is in Winnipeg, Canada. See Docket Nos. 4 and 5. On October 27, 2017, North Country amended its complaint. See Docket No. 7. The amended complaint alleges an oral North Dakota forum selection agreement exists between the parties pursuant to a joint venture. See Docket No. 7, p. 22. It also added Mandako International, Inc. as a party. See Docket No. 7, p. 1. The amended complaint and a summons were personally served on a Mandako purchasing manager in Manitoba, Canada on November 22, 2017. See Docket Nos. 34 and 35. On the same date, Mandako renewed its motion to dismiss alleging the same deficiencies asserted in its initial motion. See Docket Nos. 22 and 23.

### III.    LEGAL DISCUSSION

This motion presents the threshold issues of whether service was adequate and whether this Court is the proper venue for the case. Mandako asserts that neither the original nor the amended complaint were properly served. See Docket No. 32, pp. 2-3. Mandako also argues that, given the forum selection provision in the 2016 Agreement, venue is proper in Winnipeg, Canada. See Docket No. 32, pp. 6-10. North Country, on the other hand, argues the parties had already verbally

4

agreed, pursuant to a joint venture, that venue should be in North Dakota. See Docket No. 29, pp. 9-10. North Country claims that, to the extent the parties agreed otherwise in the 2016 Agreement, North Country was under duress and their written agreement should be held void as unconscionable. See Docket No. 29, pp. 10-12. The Court concludes the doctrine of *forum non conveniens* applies to this case and consequently dismisses the suit without reaching the issue of service of process. See Sinochem Int'l Co. v. Malaysian Int'l Shipping Corp., 127 S.Ct. 1184, 1192 (2007) (a district court need not address other threshold issues, including jurisdictional issues, before dismissing a suit on *forum non conveniens* grounds).

This Court had occasion to explain the doctrine of *forum non conveniens* in *Star Insurance Company v. Continental Services, Inc.*, 916 F. Supp. 2d 936, 941 (D.N.D. 2013). The Court explained:

> In the seminal case discussing the *forum non conveniens* doctrine, the United States Supreme Court explained that the doctrine gives courts the power, in exceptional cases, to decline jurisdiction even when jurisdiction exists and venue is proper. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). . . . It is a discretionary doctrine which vests in the district courts the power to abstain from the exercise of jurisdiction even where authorized by statute *if* the litigation can be more appropriately conducted in a foreign tribunal. The doctrine presupposes the existence of an adequate alternative forum where the matter can be resolved. Id.; Cent. States Indus. Supply, Inc. v. McCullough, 218 F.Supp.2d 1073, 1081 (N.D. Iowa 2002). If such a forum exists, the trial court must balance a number of non-exhaustive "public interest" and "private interest" factors first set forth in *Gilbert* in making the forum determination. The "private interest" factors consist of the following:
>
> 1) the relative ease of access to sources of proof;
>
> 2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;
>
> 3) the possibility of view of the premises, if view would be appropriate to the action; and
>
> 4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

5

McCullough, 218 F.Supp.2d at 1081. The "public interest" factors consist of the following:

1) administrative difficulties flowing from court congestion;

2) the forum's interest in having localized controversies decided at home;

3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

5) the unfairness of burdening citizens in an unrelated forum with jury duty.

Star Ins. Co. at 941 (emphasis in original).

The Court first finds an alternative forum exists. "This requirement is satisfied, ordinarily, if the defendant is amenable to process in the alternative jurisdiction." De Melo v. Lederle Labs., 801 F.2d 1058, 1061 (8th Cir. 1986). The parties are currently engaged in litigation before the Court of Queen's Bench for Manitoba, in Winnipeg, Canada. See Docket Nos. 5-1. Thus, the preliminary requirement of an alternative forum is satisfied. The Court now turns to its consideration of the private and public interest factors.

There is generally a strong presumption in favor of a plaintiff's choice of forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). However, the presumption shifts against the plaintiff when the parties' agreement contains a forum selection clause:

[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." But when a plaintiff agrees by contract to bring suit only in a specified forum— presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that

> initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

Atlantic Marine Const. Co. v. United States Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 64-65 (2013) (internal citation omitted). Thus, when the parties have agreed to a forum-selection clause, "[a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. at 65.

North Country attacks the validity of the 2016 Agreement's forum selection clause on a number of grounds. First, North Country argues that the parties verbally agreed North Dakota would be the proper forum pursuant to their alleged joint venture. See Docket No. 29, pp. 8-10. The Court notes that, although North Country has asserted the existence of a joint venture, it has not pled any specific facts concerning the parties alleged decision to make North Dakota their chosen forum. For example, it is not clear when, where, or how the parties came to this purported oral agreement. Even assuming the parties had orally agreed to a North Dakota forum, they subsequently agreed to a Canadian forum in writing. The 2016 Agreement contains an integration provision that states it supersedes "all prior contemporaneous agreements, representations, and understandings of the parties." See Docket No. 24-1, p. 6.

North Country also challenges the Winnipeg forum selection provision on grounds that the various sales representative agreements do not manifest its intent. North Country argues: "To the extent that there may be any signed agreements between North Country and defendants naming Winnipeg as the proper venue, they were acquired by defendants through duress and unconscionable dealings." See Docket No. 29, p. 10. North Country asserts Mandako had knowledge of North Country's strained financial position and Mandako used that knowledge to leverage a number of increasingly unfavorable sales representative agreements, including the 2016

7

Agreement containing the forum selection provision. See Docket No. 7, pp. 9-10 and Docket No. 29, pp. 11-12.

"Unconscionability is a doctrine which allows courts to deny enforcement of a contract because of procedural abuses arising out of the contract's formation or substantive abuses relating to the terms of the contract." Strand v. U.S. Bank Nat'l Assoc. ND, 2005 ND 68, ¶ 4, 693 N.W.2d 918 (citing Weber v. Weber, 1999 ND 11, ¶ 11, 589 N.W.2d 358). Procedural abuses relate to deficiencies in the contract formation process and encompass factors relating to unfair surprise, oppression, and inequality of bargaining power. Id. at ¶ 7. Substantive abuses concern the contract provision in question and occur when the terms of a contract are unreasonably unfavorable, impair the bargaining process, or contravene the public interests. Id at ¶ 10 (quoting 8 Richard A. Lord, *Williston on Contracts* § 18.10 (4th ed. 1998).

The Court finds the facts of this case, as pled by North Country, do not meet the requirements for unconscionability. Even if Mandako used North Country's unfavorable financial situation as leverage in negotiations, North Country is a sophisticated commercial entity. North Country engaged in business across a number of states, over a number of years, with a number of dealerships, and as this case demonstrates, with at least one foreign corporation. Although North Country may have felt compelled to enter into the 2016 Agreement because of its debt, this does not amount to unconscionability given this commercial context. The Court, having determined the parties' choice of forum provision is valid and not unconscionable, assumes all of the private interest factors weigh in favor of a Winnipeg forum. See Atlantic Marine, 571 U.S. at 64.

The Court turns now to the second part of its inquiry—the public interest factors. North Country argues these factors weigh in its favor because most of its sales have been in North Dakota and it anticipates calling witnesses from North Dakota. See Docket No. 29, p. 14. Mandako argues

the opposite, contending its connection to Manitoba's economy and the parties' Canadian choice of law provision tilt the scale in its favor. "[P]ublic interest factors favor dismissal where the court would be required to untangle choice of law problems and analyze foreign law." Fraizer v. St. Jude Med., Inc., 609 F. Supp. 1129, 1132 (D. Minn. 1985). After weighing the factors, the Court concludes the public interest does not outweigh the parties' written forum selection. See Atlantic Marine, 571 U.S. at 62. ("a valid forum-selection clause should be given controlling weight in all but the most exceptional cases").

**IV.    CONCLUSION**

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Defendants' renewed motion to dismiss (Docket No. 22) is **GRANTED** and the Plaintiff's amended complaint is **DISMISSED**. The Court also **DENIES AS MOOT** Mandako Agri Marketing (2010) Ltd.'s motion to dismiss (Docket No. 4).

**IT IS SO ORDERED**

Dated this 10th day of May, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court